# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND K. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:13-CV-252 CAS |
| v. | ) |
| | ) |
| BEELMAN TRUCK COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on defendant Beelman Truck Company's ("Beelman") motion to exclude certain testimony of plaintiff's expert witness William Hampton pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Plaintiff Raymond K. Jones opposes the motion and it is fully briefed. Neither party has requested an evidentiary hearing, and the parties have submitted an evidentiary record including exhibits and deposition testimony. The Court finds that it can make a proper Daubert analysis without the need for an evidentiary hearing or oral argument. For the following reasons, Beelman's motion will be granted in part and denied in part.

**I.     Background**

In the early morning hours of January 17, 2008, while walking along the highway leading toward his home, plaintiff was struck by a Beelman tractor-trailer operated by Steven Reinhardt. The accident occurred on Missouri Route 221, near its intersection with U.S. Highway 67 in Farmington, Missouri. Plaintiff alleges he suffers serious and permanent injuries to his head, body, back, arms, legs, face, spine, organs, and feet. He brings this suit against Beelman in two counts: negligence (Count I) and negligent failure to train (Count II).

**II.     Legal Standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. In Daubert, the United States Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." Daubert, 509 U.S. at 589. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

The Eighth Circuit Court of Appeals has stated that proposed expert testimony must meet three criteria to be admissible under Rule 702. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." Id. (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." Id. To meet the third requirement, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods;" and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

The Eighth Circuit has explained that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999), and "favors admissibility if the testimony will assist the trier of fact." Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will

be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

**III.    Discussion**

Plaintiff disclosed Mr. William E. Hampton as an expert witness. Mr. Hampton's expert report concludes as follows:

(1)    Steven Reinhardt was inattentive as he approached Raymond Jones.

(2)    Steven Reinhardt had a sight distance of 350 to 500 feet ahead.

(3)    Steven Reinhardt had a distance to perceive and brake his vehicle to a stop prior to reaching Raymond Jones if he was attentive, while traveling at 35, 40, and 45 mph.

(4)    Steven Reinhardt had a distance to perceive and swerve at 35, 40, 45 mph to avoid Raymond Jones.

(5)    There was sufficient ambient lighting and headlamp lighting to illuminate Jones in or near the roadway.

(6)    The dirt on Reinhardt's windshield and headlamps further diminished his ability to see properly.

(7)    Due to the absence of Steven Reinhardt's drivers' daily logs leading up to the date of the crash, I could not investigate the hours worked and movements of Steven Reinhardt. These records should have been retained by the Beelman Trucking Company.

(8)    Steven Reinhardt did not place his vehicle in an emergency braking mode.

(9)    If Steven Reinhardt would have been attentive, he could have avoided this crash.

Beelman moves for the exclusion of Mr. Hampton's conclusion numbers 1, 2, 3, 4, 5, 6, and 9, arguing that Mr. Hampton is either unqualified to give the opinions or the opinions are unsupported and unreliable. Beelman states that Mr. Hampton is not qualified to render opinions

regarding human factors evidence and, even if he was qualified, his opinions and methodology are unreliable and violate Daubert. The Court will address each argument.

   A.   Human Factors Opinions

Beelman argues that Mr. Hampton is not a human factors expert, and is therefore not qualified to testify as to conclusion numbers 1, 2, 3, 4, and 9 regarding driver perception and response. Beelman states that because Mr. Hampton testified in another case that he is not a human factors expert, he does not have specialized knowledge regarding human factors and these opinions should be excluded.

Rule 702 requires the area of the witness's competence to match the subject matter of the witness's testimony. "[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Mr. Hampton's professional experience as an accident reconstructionist bears a close relationship to the opinions provided in his report. See Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp., 2013 WL 3154012, *7 (E.D. Mo. June 21, 2013) (finding the experience of the proffered expert did not bear a close enough relationship to his opinion to provide a sufficient basis for the opinion); compare to In re Levaquin Products Liab. Litig., 2010 WL 8399948, *7 (D. Minn. Nov. 12, 2010) (expert was qualified to provide opinion on medication labeling because of her long experience in the pharmaceutical industry, which included drafting product labels).

Since 1991, Mr. Hampton has been the President of W.E. Hampton & Associates, Inc. and has provided consulting and expert testimony on motor vehicle accident reconstruction, motor carrier safety and performance, and motor carrier compliance with federal and state regulations. He has been certified as a Motor Vehicle Accident Reconstructionist through the Missouri State Highway Patrol and the Institute of Police Technology and Management. He has testified as an

expert witness in civil and criminal cases in various state and federal courts and as a police officer and a private investigator. His background includes thirteen years of service for the Missouri State Highway Patrol as a patrol officer investigating motor vehicle accidents and providing accident reconstruction. He also worked several years at Champion Distribution Services, a nationwide motor carrier, as the Director of Safety & Maintenance.

Mr. Hampton's conclusions 2, 3, and 4 fall well within his area of expertise: accident reconstruction and investigation. A driver's perception distance, reaction distance, braking distance, and total stopping distance are discussed on page 2-14 of the Missouri Commercial Driver License Manual. See Pl.'s Opp'n, Ex. 3 at 2-14. Mr. Hampton used equations published by the Institute of Police Technology and Management in its Equations for the Traffic Accident Reconstructionist Manual to calculate Mr. Reinhardt's time to stop and swerving distance to avoid an object. See Pl.'s Opp'n, Ex. 4 at 15, 18, 20, 28. These calculations were based, in part, on Mr. Reinhardt's testimony regarding his speed at the time of the accident and the strength of his headlight beams. The Court cannot find that testimony as to a driver's sight distance, perception distance, and swerve distance necessarily requires expertise in human factors as opposed to motor vehicle accident reconstruction. In fact, it seems the question of perception is always at issue in an accident reconstruction case where allegations include that the driver should have braked or swerved to avoid the collision. These conclusions all fall within the scope of Mr. Hampton's expertise in accident reconstruction.

The cases defendant relies on are distinguishable, as they concern experts who were testifying outside their field of experience. For example, in Anderson v. Raymond Corporation, 340 F.3d 520 (8th Cir. 2003), the Eighth Circuit upheld a district court's order striking an expert's testimony regarding a defective lift truck. The expert admitted he was not an expert in the design

or engineering of lift trucks; had never designed or consulted on a design of a lift truck; and had never designed a component part or a warning for a lift truck. Id. at 523. The proffered expert had neither operated nor seen a lift truck before the case. Id. Here, Mr. Hampton has extensive experience in accident reconstruction, which includes driver response time.

While Mr. Hampton's conclusion numbers 2, 3, and 4 fall within his area of expertise, his conclusion numbers 1 and 9 are problematic. Conclusion number 1 states: "Steven Reinhardt was inattentive as he approached Raymond Jones," and conclusion number 9 states: "If Steven Reinhardt would have been attentive, he could have avoided this crash." These conclusions squarely address the ultimate issue of whether Mr. Reinhardt was negligent in driving his vehicle. "While such expert testimony is permissible, see Fed. R. Evid. 704(a), courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." American Auto. Ins. Co. v. Omega Flex, Inc., 783 F.3d 720, 725 (8th Cir. 2015) (internal quotations omitted). Mr. Hampton has no first-hand knowledge that Mr. Reinhardt was inattentive as he approached plaintiff. He was not present at the time of the accident, and he certainly was not monitoring Mr. Reinhardt's actions prior to the accident. Mr. Hampton is drawing conclusions on the ultimate issue of fact. The Court will exclude Mr. Hampton's conclusion numbers 1 and 9 because they invade the province of the jury on questions that the jury is entirely capable of answering as the trier of fact.

B. <u>Reliability</u>

*1. Mr. Hampton's Testimony Regarding Illumination and Discernment Distance*

In addition to objecting that Mr. Hampton's testimony is outside his area of expertise, Beelman argues Mr. Hampton's opinions and conclusions are unreliable. Beelman first objects to the reliability of Mr. Hampton's testimony regarding the distinction between illumination distance and discernment distance. Beelman argues that because Mr. Hampton appears at times to conflate the two concepts, his testimony is unreliable.

In his deposition, Mr. Hampton defined "discernible distance" and "detection distance" as "the actual distance that [the driver] would have been able to perceive, react, and slow his vehicle to a stop." (Hampton Dep. at 81-82). Later in the deposition, Mr. Hampton testified that if the truck's headlights illuminate to 500 feet, the discernment distance is also 500 feet. (<u>Id.</u> at 82-83). Mr. Hampton testified that a driver should be able to identify an object as discernible within the headlight illumination distance. (<u>Id.</u> at 82). Beelman uses this testimony as evidence that Mr. Hampton's testimony as a whole is unreliable. (Def.'s Mem. at 8). Beelman argues, and presumably its expert will argue, that an object is not necessarily discernable at all points in a vehicle's illumination distance.

At one point in his deposition, Mr. Hampton appears to conflate illumination distance and discernment distance, however the Court does not find that this makes his testimony unreliable. For example, Mr. Hampton agrees that a pedestrian wearing white clothing would be discernable in a roadway sooner than a pedestrian wearing dark clothing, illumination being constant. (Hampton Dep. at 83-84). He also included in his calculation of stopping distance a driver's perception response time (a/k/a reaction time).

| | | |
|---|---|---|
| Q. | | Once Mr. Jones was discernible, how long would it take to perceive that he is a pedestrian? |
| A. | | Well, it should take about 1.6 seconds. |

. . .

Q. So it looks like from the calculations, you have 1.5 reaction time due to ambient lighting and high beam.

A. Um-hmm.

Q. Is that taking into account the 1.6 seconds you said for perception response?

A. Well, I think on those I used 1.5 [seconds] because that's what the Commercial Driver's Manual utilized.

Q. Where does the Commercial Driver's Manual utilize a 1.5 second reaction time?

A. Well, it utilizes one-and-three-quarters second, I'm sorry.

Q. Okay. Where did you get 1.5?

A. That's what I'd had used in the past. So. And that's through the Missouri Divers Manual, I'd used that also, so. But they are referencing 1.34. So a little bit – about a quarter of a second longer.

Q. So the truck would travel farther based on the 1.34, correct?

A. It would, yes. So at 35 [mph] it's going to travel about 12 feet further.

Q. And you used the term "reaction time." Is that used to mean the same thing as perception response time?

A. It is.

(Hampton Dep. at 84, 88-89).

Based on this testimony, Mr. Hampton's calculations of stopping distance take into account a driver's perception/reaction time of 1.5 or 1.6 seconds. Factors affecting perception/reaction time include detection, identification, decision, and response. (Def.'s Opp'n, Ex. 6; Ex. 5 (discussing

perception/reaction time)). Although the deposition testimony is unclear whether discernment of an object is included in a driver's perception/reaction time, it is clear that Mr. Hampton took into account a driver's perception/reaction time in calculating stopping distance. (Hampton Dep. at 84, 88-89).

Beelman states that Mr. Hampton's calculations are flawed because he is basing his calculations on a faulty determination of when plaintiff could first be discerned. (Def.'s Reply at 5). Mr. Hampton assumes plaintiff could be discerned between 350 and 500 feet from the Beelman vehicle, that is, when he was illuminated. Beelman disagrees. The Court finds it likely miscommunication between Beelman's counsel and Mr. Hampton may have contributed to Mr. Hampton's lack of distinction between discernment and illumination distance at deposition. In any event, Beelman may explore discernment distance versus illumination distance through its own expert testimony and through thorough cross-examination of Mr. Hampton. As stated above, Rule 702 "favors admissibility if the testimony will assist the trier of fact." Clark 150 F.3d at 915. Beelman's motion to exclude Mr. Hampton's conclusions as unreliable based on his apparent confusion regarding discernment and illumination distance should therefore be denied.

   2.   *Mr. Hampton's Testimony Regarding Sight Distance of a Commercial Motor Vehicle*

Next, Beelman argues the Court should bar Mr. Hampton's testimony regarding the sight distance of a commercial motor vehicle using its high beams because it is not reliable and amounts to unsupported speculation. Beelman states that Mr. Hampton "has no scientific basis for stating that the Beelman driver could have seen plaintiff at either 350 feet or 500 feet." (Def.'s Mem. at 2). Additionally, Beelman argues because Mr. Hampton did not examine an exemplar of the truck or measure the ambient lighting at the scene, the factual basis of his testimony regarding illumination

distance (i.e., the Missouri Commercial Vehicle Manual) is suspect. Beelman states that had Mr. Hampton conducted any testing to determine the lighting levels at the scene or by the truck, he would have discovered that the lighting levels at the scene do not support his contention that plaintiff was visible at 350 or 500 feet. (Reply at 3).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (quoting Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995)); Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 356 F.3d 850, 858 (8th Cir. 2004) ("Generally, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility."). The Eighth Circuit Court of Appeals has instructed that "[a]n expert's opinion must be excluded only if it is so fundamentally unsupported that it can offer no assistance to the jury." Id. (quoted cases omitted).

Mr. Hampton lifted the illumination distance of headlights directly from the Missouri Commercial Motor Vehicle Manual, § 2.11.4, which states that with low beams a driver can see ahead about 250 feet; with high beams, about 350-500 feet. See Pl.'s Opp'n, Ex. 3. Beelman objects that this testimony is unreliable because Mr. Hampton never measured the headlights of the truck at issue or an exemplar truck. While Beelman's argument is well-taken, it goes to the factual basis and credibility of Mr. Hampton's testimony, which is to be examined in cross-examination. The Court finds that Mr. Hampton's testimony is sufficiently reliable to assist the jury's determination of a disputed issue. The Court will not exclude this testimony under Daubert.

### 3. Mr. Hampton's Testimony Regarding Ambient Lighting at the Scene

Beelman moves to exclude Mr. Hampton's opinion that "[t]here was sufficient ambient lighting and headlamp lighting to illuminate Jones in or near the roadway." When questioned regarding the amount of ambient lighting at the scene, Mr. Hampton could not describe it, did not measure it, and "[a]ll [he] could tell you is there was light provided on the roadway . . . .minimum lighting and it did illuminate the roadway." (Hampton Dep. 78-79). He has tested ambient lighting in the roadway in past cases, admits he could have tested it here, but did not conduct any test to measure the amount of ambient lighting at the scene. On questioning, he states:

> Q. When you visited the accident site, did you measure the light level there?
> A. I did not.
> Q. Did you measure the light level at the point of impact?
> A. No.
> . . .
> Q. Did they [lamps] provide lighting to the area where this accident occurred?
> A. Some, yes.
> Q. How much?
> A. I can't describe it to you.
> Q. Did you measure it?
> A. No. It was up to the area of the accident.
> Q. Okay. How much up to the area of the accident?
> A. I wasn't able to measure a scientific reading at that point.
> Q. What prevented you from doing that?
> A. Nothing.
> . . .
> Q. How much light was provided on the roadway by the McDonalds lights?
> A. All I can tell you is there was light provided on the roadway.
> Q. You can't tell us how much?
> A. No.
> Q. You could have measured it, correct?
> . . .
> Q. Have you measured light before?
> A. I have, yes.
> Q. And did you make the determination not to measure light in this case?
> A. I did. . . .
> Q. And you can't tell us how well lit it was, correct?

> A. No, I can't.

(Hampton Dep. 62-63, 77-79).

The Court will not allow Mr. Hampton to testify regarding ambient lighting at the scene. His conclusion in his report that "there was sufficient ambient lighting and headlamp lighting to illuminate Jones in or near the roadway" does not include any measure of distance or description of the ambient lighting. Unlike his testimony regarding the headlamps, which was based on the driver's testimony that he was using his high beams and the Missouri Commercial Vehicle Manual's statement that high beams illuminate the roadway up to 350 to 500 feet, Mr. Hampton's opinion regarding ambient lighting is so fundamentally unsupported that the Court finds it can offer no assistance to the jury, and will exclude it.

### 4. Mr. Hampton's Testimony Regarding Dirt on Mr. Reinhardt's Windshield and Headlamps

Finally, Beelman moves to exclude Mr. Hampton's conclusion number 6, which states: "The dirt on Reinhardt's windshield and headlamps further diminished his ability to see properly." It is undisputed that Mr. Hampton never inspected the Beelman vehicle after the crash. His testimony regarding dirt on the windshield and headlamps is based only on the photographs he examined, which were exhibits to plaintiff's deposition.

> Q. Do you know what distance the headlamps of Mr. Reinhardt's truck illuminated?
>
> A. They should be on high beam at least 350 to 500 [feet]. There might have been some reduction due to the film [road dirt and dust] on his headlamp.
>
> Q. How thick was the film on his headlamps?
>
> A. I did not take a measurement. It was just illustrated in the photograph.

(Hampton Dep. at 50)

Mr. Hampton's proffered expert testimony regarding the dirt on the windshield and headlamps does not qualify as scientifically valid. His opinion is premised exclusively upon his impression of the photographs of the vehicle taken after the accident. He did not inspect the vehicle or measure any dirt or dust. Nor did he calculate any reduced strength of the headlamps or reduced visibility caused by the dirt and dust. His resulting conclusion is nothing more than speculation and conjecture and does not contribute to a legally sufficient evidentiary basis. See Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000). The jury is as capable as Mr. Hampton of viewing a photograph and noting the presence of dirt on the windshield and headlamps. Mr. Hampton's conclusion number 6 will be excluded.

## IV. Conclusion

For the foregoing reasons, Beelman's motion to exclude certain testimony of plaintiff's liability expert, William Hampton pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), should be granted in part and denied in part.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Beelman Truck Company's motion to bar certain testimony of William Hampton under Daubert and Federal Rule of Evidence 403, 702, and 704 is **GRANTED in part** and **DENIED in part**; [Doc. 44] the motion is:

**GRANTED** to the extent defendant seeks to bar testimony regarding conclusion numbers 1, 6 and 9 of Mr. Hampton's expert report and to the extent defendant seeks to bar testimony regarding ambient lighting at the scene of the accident; and

**DENIED** in all other respects.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   9th   day of June, 2015.